# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-01342-COA

**APRIL HOLIFIELD AND JEFFERY HOLIFIELD**                    **APPELLANTS**

**v.**

**HIGHLAND COMMUNITY HOSPITAL**                              **APPELLEE**

DATE OF JUDGMENT:               10/31/2023
TRIAL JUDGE:                    HON. PRENTISS GREENE HARRELL
COURT FROM WHICH APPEALED:      PEARL RIVER COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANTS:        MATTHEW LEE DEVEREAUX
ATTORNEYS FOR APPELLEE:         MATTHEW D. MILLER
                                NICHOLAS KANE THOMPSON
                                ANDREA BOYLES PACIFIC
                                KAARA LENA LIND
NATURE OF THE CASE:             CIVIL - MEDICAL MALPRACTICE
DISPOSITION:                    AFFIRMED - 04/15/2025
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., WESTBROOKS AND WEDDLE, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     Plaintiffs April and Jeffery Holifield filed a medical-negligence complaint on April 5, 2023, in the Circuit Court of Pearl River County. The complaint alleged that various defendants, including Highland Community Hospital (HCH), were liable for cervical injuries April sustained during a November 5, 2021 medical procedure.[1]

¶2.     Prior to filing suit, the plaintiffs' attorney, Matthew Devereaux, contacted Allen Gill, the claim representative for HCH's insurer, Healthcare Providers Insurance Company. Gill

---

[1] The other named defendants were Scott Stewart Carroll, CRNA; Deep South Anesthesia; and Kevin Galloway, D.O.

emailed Devereaux on January 19, 2022, and said that he would "talk with the hospital and follow up with [Devereaux]." On February 8, 2022, Devereaux emailed April's medical records to Gill and Katherine Mangum, a claims handler with Mississippi Assurance Company of Mississippi (MACM),[2] in which he mentioned the possibility of "resolv[ing] this pre-litigation." In accordance with the Mississippi Tort Claims Act (MTCA), Mangum immediately requested that "a proper notice of claim" be sent to each defendant "to better understand the allegations and parties involved."[3] Eight months later, on September 7, 2022, Devereaux emailed Gill and Mangum a "draft" notice-of-claim letter. In the draft letter, Bryan Batson was erroneously named as the "CEO" of HCH.[4] The Holifields received no further communications from Gill.

¶3.     On October 5, 2022, Devereaux mailed, by certified mail, a notice-of-claim letter. As it pertains to HCH, the notice of claim was addressed to "Bryan Maxie," who was listed as HCH's administrator in the Directory of Mississippi Health Facilities. The notice of claim letter was stamped "Received" on October 12, 2022, but there is no evidence in the record

---

[2] As noted by HCH, the record does not indicate that MACM "insures or has any relation" with HCH. Rather, according to previous case authority, "[a] nonprofit corporation, MACM is a limited pool of Mississippi physicians who are self-insured for protection against medical negligence suits." *Wells v. Tucker*, 997 So. 2d 908, 909 (¶5) (Miss. 2008). Therefore, MACM is most likely the insurance representative for the named physician defendants. We agree with HCH that "[a]ny reference to or reliance on conversations" that Devereaux had with Mangum is "irrelevant" for the purposes of this appeal.

[3] *See* Miss. Code Ann. § 11-46-11 (Rev. 2019); Miss. Code Ann. § 15-1-36(15) (Rev. 2019).

[4] The draft letter was also addressed to Kevin Galloway, D.O.; Bryan Batson, M.D. (with Hattiesburg Clinic); and Scott Stewart Carroll, CRNA.

that Maxie personally received the notice of claim for HCH.[5]  Devereaux was notified that Alaina Cedillo had since replaced Maxie as HCH's administrator; so he had a process server deliver a notice-of-claim letter upon Cedillo on October 28, 2022.[6]

¶4.    After the plaintiffs commenced this action in the circuit court, HCH filed a motion to dismiss or for summary judgment on May 24, 2023.  HCH argued that it is not "a separate entity" capable of being sued because it is a division of Forrest General Hospital (FGH), a community hospital as defined by Mississippi Code Annotated section 41-13-10(c) (Rev. 2023). HCH requested that the circuit court dismiss the Holifields' claims with prejudice because any lawsuit filed against FGH would be governed by the MTCA, and HCH is not a separate political subdivision within the MTCA.  *See* Miss. Code Ann. § 11-46-1(i) (Rev. 2019).

¶5.    The plaintiffs filed a motion for leave to amend the complaint on July 27, 2023, in which they sought to substitute FGH as the proper defendant "in place" of HCH should the circuit court "find that [HCH] is 'not an entity capable of being sued.'"  The motion claimed that HCH, FGH, "and their respective insurance representative all received pre-suit notice and were served with process in this matter."  The plaintiffs attached the Directory of Mississippi Health Facilities to the motion, explaining that HCH's and FGH's respective listings with different license numbers, addresses, and administrators led them to believe the hospitals were separate entities.

---

[5] HCH's subsequent motion to dismiss stated that, at that time, Maxie was a vice president at Forrest General Hospital.

[6] The affidavit of service on Cedillo is in the record.

¶6.    HCH filed a reply, arguing that allowing the complaint to be amended would result in prejudice because FGH did not receive a notice of claim, and "any 'notice' provided to any insurance representative is not proper notice under MTCA." HCH also noted that the one-year statute of limitations had expired.[7]

¶7.    On October 30, 2023, the circuit court denied the plaintiffs' motion to amend the complaint. First, the circuit court recognized that "HCH is a division of and owned by [FGH]," not a separate entity, and that "FGH is a 'community hospital' as defined by" section 41-13-10(c) of the Mississippi Code Annotated "and a 'governmental entity' under the [MTCA]." *See Ladner v. Forrest Gen. Hosp.*, No. 2:12-cv-19-KS-MTP, 2013 WL 3776695, at *1 & n.2 (S.D. Miss. July 18, 2013) (noting HCH is a division of FGH); *Lyas v. Forrest Gen. Hosp.*, 177 So. 3d 412, 416 (¶20) (Miss. 2015) (recognizing FGH is a "community hospital under section 41-13-10(c) of the Mississippi Code"). The court determined that the Holifields "knew or should have known that FGH was the owner of HCH and HCH was a division of FGH." Second, the court noted that it was "commonly known" in the local community "that FGH purchased Crosby Memorial Hospital and built HCH" and found that the "plaintiffs were not reasonably diligent in their on-line search attempts to identify FGH as the owners of HCH prior to the expiration of the statute of limitations." Finally, the court concluded that because the plaintiffs had not served a notice of claim on FGH's chief executive officer,[8] and the statute of limitations had expired, their request to

_____

[7] Miss. Code Ann. § 11-46-11(3).

[8] Mississippi Code Annotated section 11-46-11(1) requires that a notice of claim be filed "with the chief executive officer of the governmental entity" at least ninety days

4

amend the complaint "to add FGH is futile."

¶8.     The circuit court granted HCH's motion to dismiss or for summary judgment and entered a final judgment of dismissal with prejudice on October 31, 2023. *See* M.R.C.P. 54(b). As in its order denying the motion to amend the complaint, the court noted that HCH was a division of FGH, citing the relevant caselaw and statutes. The circuit court also addressed the Mississippi Supreme Court's recent holding in *University of Mississippi Medical Center v. Aycock*, 369 So. 3d 534 (Miss. 2023), that although the plaintiffs there had "never filed the statutorily required notice with the hospital's chief executive officer," the case should be remanded to allow plaintiffs an opportunity to "establish equitable estoppel or waiver based on the medical center's conduct by competent evidence." *Id*. at 540, 542 (¶¶24, 28).[9] The court concluded that *Aycock* was "distinguishable" because the Holifields "had no communication with FGH (only with a claims representative working on behalf of FGH)," and "HCH committed no acts or made no communicat[ions] which could have given Plaintiffs occasion to say they 'relied' upon such acts or communications in good faith or to their detriment."[10]

_____

"before instituting suit."

[9] Specifically, the *Aycock* court noted "the medical center's behavior, *e.g.*, corresponding with plaintiffs' counsel as though the plaintiffs' notice was being evaluated and investigated," and there was "no clearly identified chief executive officer for purposes of giving presuit notice." *Aycock*, 369 So. 3d at 541 (¶26). The hospital had also denied the claim in writing, which "could amount to a representation that the hospital had received notice." *Id*.

[10] Lastly, the court noted in its findings that had the plaintiffs conducted a "more thorough on-line search," they would not have "sued a party, HCH, which is not subject to suit under the [MTCA]."

5

¶9.     The Holifields appeal the circuit court's ruling denying their motion to amend the complaint and the Rule 54(b) final judgment dismissing their claims with prejudice. We find no error and affirm.

**STANDARD OF REVIEW**

¶10.    Our appellate courts review alleged errors of law, including "the proper application of the Mississippi Tort Claims Act, de novo." *Aycock*, 369 So. 3d at 538 (¶14) (quoting *Maldonado v. Kelly*, 768 So. 2d 906, 908 (¶4) (Miss. 2000)). We likewise conduct a de novo review of a trial court's grant or denial of a motion for summary judgment. *Id.* Viewing the evidence "in the light most favorable to the party against whom the motion has been made," "[s]ummary judgment is appropriate if there is no genuine issue as to any material fact." *Id.* (internal quotation marks omitted) (quoting M.R.C.P. 56(c)).

**DISCUSSION**

¶11.    Both of the court's rulings at issue on appeal require a determination whether the Holifields properly served presuit notice on FGH in accordance with the MTCA. The Holifields contend that the circuit court's dismissal of the case with prejudice "rests on an erroneous finding of failure to comply with the MTCA notice requirements with respect to [FGH]." They argue that "the notice of claim letter gave the proper party on notice that, except for the mistake in naming HCH, FGH would have been named." The Holifields claim that the circuit court should have therefore granted their motion to amend the complaint because they were merely seeking to correct an error relating back to the original pleading, and "the amendment would simply substitute the name [of] the larger organization of which

6

HCH is a part." Their argument is unpersuasive here, as there is no evidence that the chief executive officer of FGH was ever served presuit notice as required by statute.

### I. HCH's Motion to Dismiss or for Summary Judgment

¶12. "Mississippi law requires substantial compliance with the notice provisions of the MTCA." *Keever v. Miss. Insts. of Higher Learning*, 309 So. 3d 460, 463 (¶9) (Miss. Ct. App. 2019). "The determination of substantial compliance is a legal, though fact-sensitive, question." *Id.* The Holifields claim that by sending a *draft* notice of claim letter to HCH's insurance claims representative and sending the notice of claim letters to the HCH administrator, they had "substantially complied with the notice requirements" of the MTCA.

¶13. The Mississippi Supreme Court "has held that subsection 2(a) of Section 11-46-11, providing that the notice of claim 'shall' be filed with the political subdivision's chief executive officer, is mandatory with regard to who the recipient must be." *Burnett v. Hinds Cnty. ex. rel. Bd. of Supervisors*, 313 So. 3d 471, 475 (¶12) (Miss. 2020) (citing *Tallahatchie Gen. Hosp. v. Howe*, 49 So. 3d 86, 91-92 (Miss. 2010)). "The 'shall' in the statute renders the particular recipient mandatory." *Id.* at 476 (¶14) (citing *Howe*, 49 So. 3d at 91-92). "If a complainant is and remains noncompliant with that mandatory provision, the lawsuit must be dismissed." *Id.* at 476-77 (¶14). The Holifields sent the notice of claim letter only to Gill, the insurance representative,[11] and an HCH administrator. Additionally, while Maxie later served as vice president for FGH, there is no evidence that Maxie received the notice of

---

[11] We note that Gill received only a draft of the letter. Furthermore, our Court held in *Newton v. Lincoln County*, 86 So. 3d 270 (Miss. Ct. App. 2012), that sending only a presuit letter to the governmental entity's insurance representative was insufficient to comply with the MTCA notice provisions. *Id.* at 272-74 (¶¶9, 15-16).

claim letter on behalf of HCH or FGH or that he was the chief executive officer of either.

¶14. Citing the supreme court's holding in *Aycock*, the Holifields argue that "there is at least a question of fact as to whether the Holifields reasonably relied on the representations of HCH and/or FGH by way of their communication with counsel and their confusing/contradictory listings in the Mississippi Department of Health Directory." However, unlike the defendants in *Aycock*, neither Gill nor HCH communicated with the Holifields or their attorney after the notice letter was mailed—whether a denial of the claim or otherwise. Thus, with no evidence that FGH received a presuit notice of claim or that the Holifields were somehow misled either by HCH or FGH, we find no basis for the Holifields' argument of waiver or estoppel.

¶15. The supreme court has held that "the proper remedy" for a claimant's failure "to comply with the mandatory provisions of Section 11-46-11 . . . is dismissal." *Aycock*, 369 So. 3d at 540 (¶22). Finding no genuine issue of material fact that the Holifields failed to give presuit notice to FGH, we affirm the court's final judgment dismissing the complaint with prejudice, as the one-year statute of limitations had expired.

## II. Motion to Amend the Complaint

¶16. The Holifields also contend that the circuit court erred in denying their motion for leave to amend the complaint. Rule 15(a) of the Mississippi Rules of Civil Procedure provides in part:

> On sustaining a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), or for judgment on the pleadings, pursuant to Rule 12(c), leave to amend shall be granted when justice so requires upon conditions and within time as determined by the court, provided

8

matters outside the pleadings are not presented at the hearing on the motion. Otherwise a party may amend a pleading only by leave of court or upon written consent of the adverse party; leave shall be freely given when justice so requires.

With respect to an amendment relating back to an original pleading, Rule 15(c) further provides:

> (1) Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.
> (2) An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by Rule 4(h) for service of the summons and complaint, the party to be brought in by amendment:
> > (a) has received such notice of the institution of the action that the party will not be prejudiced in maintaining the party's defense on the merits, and
> > (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

A trial court's denial of a motion to amend a pleading is reviewed for abuse of discretion. *Gilmer v. McRae*, 355 So. 3d 219, 227 (¶24) (Miss. 2022). The supreme court has further recognized this Court's "well-stated" holding that "when the proposed amendment would still render the claim futile," the trial court "is well within [its] discretion to deny such request." *Spiers v. Oak Grove Credit LLC*, 328 So. 3d 645, 651 (¶14) (Miss. 2021) (quoting *Griffin v. CitiMortgage Inc.*, 296 So. 3d 767, 772 (¶13) (Miss. Ct. App. 2020)).

¶17. The two cases the Holifields cite in support of their claim that notice to FGH was sufficient can be distinguished from the present case. In the first case, the plaintiff sued the "Pearl River County Sheriff's Department" for injuries sustained while working as a

9

paramedic. *Mieger v. Pearl River County*, 986 So. 2d 1025, 1025-26 (¶¶1-2) (Miss. Ct. App. 2008). After the statute of limitations had expired, she sought "to amend her complaint to add 'Pearl River County' as a defendant." *Id*. at 1027 (¶10). Our Court reversed the trial court's denial of the motion to amend because the plaintiff's timely service of the notice of claim to the president and clerk of the county's board of supervisors "put the proper county official on notice that, except for the mistake of naming the wrong party, the action would have been brought against the county." *Id*. at 1028 (¶¶12-13). But as we clarified in *Esco v. Madison County*, the issue in *Mieger* was "not deciding the sufficiency of Mieger's notice under the MTCA; our analysis was limited to the requirements of Rule 15 for relating complaints back to the date of filing." *Esco v. Madison County*, 331 So. 3d 545, 551 (¶21) (Miss. Ct. App. 2021).

¶18.    In the second case, *Scaggs v. GPCH-GP Inc.*, 23 So. 3d 1080, 1081 (¶1) (Miss. 2009), the plaintiff had named "Garden Park Medical Center" as the defendant, rather than "GPCH-GP, Inc. d/b/a Garden Park Medical Center." The supreme court rejected the appellee's "argument that Scaggs failed to make a diligent effort to amend the complaint." *Id*. at 1085 (¶16). "[R]easonable diligence is a standard only for determining the efforts made to discover the true identity of a named fictitious party under Rule 9(h)" under the Mississippi Rules of Civil Procedure. *Id*. (quoting *Wilner v. White*, 929 So. 2d 315, 323 (Miss. 2006)). Because Scaggs sought only "to correct a misnomer, not to sue a previously-unknown" defendant, Rule 9(h) did not apply. *Id*. The supreme court reversed and remanded, concluding that the trial court's dismissal of the case denied the plaintiff "an opportunity for

a trial on the merits because of a misnomer in the complaint" and that she "should not be penalized for the misnomer" where the "correction is simple and prejudices no one." *Id*. at 1085 (¶17).

¶19.    Relying on this holding, the Holifields challenge the circuit court's finding that they "were not reasonably diligent in their on-line search attempts to identify FGH as the owner of HCH prior to the expiration of the statute of limitations." Specifically, the court noted in its order, "Since the Crosby name and Crosby Memorial Hospital were commonly known to the citizens of Picayune, and . . . FGH . . . built HCH to replace Crosby Memorial Hospital, the Court finds that Plaintiffs were not reasonably diligent." They argue that the court's "imposition of a diligence requirement with respect to naming HCH was in error." We find no reversible error. As the court noted, a "reasonably diligent" search of the internet and legal databases easily identifies "FGH as the owner of HCH," and we find the court appropriately relied on caselaw identifying HCH as a division of FGH to make its findings.[12]

¶20.    Moreover, as HCH argues, Rule 201(b)(1)-(2) of the Mississippi Rules of Evidence permits a trial court to take judicial notice of an adjudicative fact that "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." In *Enroth v. Memorial Hospital at Gulfport*, 566 So. 2d 202 (Miss. 1990), the supreme court held that a trial court could take judicial notice of a hospital's ownership status, reasoning:

---

[12] *See Ladner*, 2013 WL 3776695, at *1. In the motion to dismiss, FGH noted that a Google search for HCH "returns the HCH webpage, which is part of the 'Forrest Health' website." *See* Forrest Health, *Highland Community Hospital*, www.forresthealth.org/our-locations/highland-community-hospital (last visited Apr. 8, 2025).

> One does not have to be a lawyer to sense that the organization, funding and operation of Memorial Hospital at Gulfport are matters "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Certainly in this latter sense the factual status of the hospital is one "not subject to reasonable dispute." The Chancery Court, however, relied on Rule 201(b)(1) in holding that the Hospital's status was generally known within the community. We agree here as well. These factual matters regarding the Hospital are the kind of adjudicative facts subject to the Court's judicial knowledge within Rule 201(b)(1) or (2).

*Id*. at 205.[13] The circuit court in this case likewise recognized that the ownership of HCH was a matter "capable of accurate and ready determination" by resorting to accurate sources.

¶21. Finally, the plaintiff in *Scaggs* had sued the proper defendant and party but simply used an incorrect name. Here, HCH and FGH are not the same entity, and FGH is the only governmental entity capable of notice under the MTCA; so the Holifields were attempting to add a new party to the complaint—a party that never received presuit notice under the MTCA. As the *Scaggs* court clarified, "[t]he lack of a claim being asserted against a new party renders . . . Rule 15(c) inapplicable." *Id*. at 1083 (¶8).

¶22. We agree with HCH that "the real reason for the denial of the [m]otion to [a]mend related to the [p]laintiffs failing to properly serve the notice of claim on the chief executive officer of FGH prior to the expiration of the one-year statute of limitations such that any request to amend the complaint to add FGH would be futile." Therefore, this Court's holding in *Esco* is more instructive to our analysis than the cases cited by the Holifields. In *Esco*, it was undisputed that the plaintiff failed to provide notice to the governmental entity in

---

[13] Although *Enroth* was decided prior to the enactment of the MTCA, we find its holding is relevant to the trial court's discretion in taking judicial notice that FGH owned HCH.

12

accordance with MTCA statutory requirements (i.e., the chancery clerk of the county), and

we concluded:

> In the context of an MTCA case, pre-suit notice either does or does not occur prior to the filing of a complaint. There is little that can be pleaded in an amended complaint that can cure the failure to give proper pre-suit notice of an MTCA claim. It follows then that a court may deny a motion to file an amended complaint that pleads nothing that would cure the fundamental failure to give pre-suit notice to an MTCA entity.

*Esco*, 331 So. 3d at 553 (¶27). We likewise find that because the Holifields did not provide

the statutorily required notice to FGH under the MTCA, the court did not err in denying the

motion to amend the complaint.

¶23. **AFFIRMED.**

**CARLTON, P.J., WESTBROOKS, LAWRENCE, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR. WILSON, P.J., McDONALD AND McCARTY, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**